R. R. CRAWFORD & CO. v. GEISER MANUFACTURING COMPANY.

*Contract, breach of—Measure of Damages.*

1. A paper-writing as follows: You will please furnish threshing machines (describing them) to be shipped to Salisbury on or before May 1st, 1881, at a discount of 30 per cent. from price-list, to be paid by draft at date of shipment, &c., signed by both parties to the transaction, is a contract sufficiently explicit to support an action for its breach.

2. The measure of damages for a failure to furnish the machines is the difference between the contract price and their market value at Salisbury, on the first day of May, 1881, less the cost of transportation.

3. The expenses incurred by the plaintiff in sending an agent to the defendant in reference to the matter, are not to be included in the damages resulting from the breach of the contract.

4. The case is remanded to the end that the damages may be assessed as herein directed. The verdict and judgment in other respects are not disturbed.

(*Burton* v. *R. R. Co.*, 84 N. C., 192, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of ROWAN Superior Court, before *Gudger, J.*

The action was brought for a breach of contract. The plaintiff alleged that he and the defendant, a corporation organized by the laws of Pennsylvania, whose principal place of business was at Waynesboro, in said state, entered into the following contract on the 28th of August, 1880:

WAYNESBORO, Franklin Co., Pa.

*Geiser Manufacturing Company:* You will please furnish, marked to me at Salisbury, N. C., six No. 2 separators [threshing machines], four of said machines to have horse-powers and to be changed to suit the trade, either to be on two or four wheels, as seem best, and to be shipped on or before May 1, 1881, at a discount of 30 per cent. from the list of the Geiser Manufacturing Company, to be paid by draft at date of shipment, and any engines wanted, at a discount of 25 per cent. from list, payable when shipped. (Signed by the plaintiff and the defendant).

On the first day of March, 1881, the plaintiff informed the defendant that he was ready to pay cash for the machines, and requested that an invoice be sent by mail, at once, for the articles described in the contract, and, about the 19th of April following, offered to pay defendant for them, and requested a shipment according to the contract; but defendant declined to accept payment, and refused to ship the machines. The plaintiff further alleged a readiness to comply with the contract, and that he

has been subjected to inconvenience and damage, by reason of the failure to perform the same on the part of the defendant.

The defendant, answering, admits the writing set forth in the complaint and alleged to be a contract, and which the defendant refers to as a "letter," to be correctly set forth; but denies that it in any way binds the defendant to furnish the machinery therein referred to, at the prices therein specified, or to furnish them at all; that upon the face of said letter, it is, at most, a written request to furnish the machines at the prices designated, and is in no way binding or obligatory upon the defendant. The defendant admits the receipt of the "letter" from plaintiff, and intended to comply with the request, although not bound to do so, until the early part of the year 1881, when the defendant closed out a contract with a firm in Richmond, Virginia, for a sale of these machines, and on the 9th of February, 1881, notified plaintiff that in consequence of the creation of such agency, the defendant could not comply with the request of August 28, 1880, but that being still willing to accommodate the plaintiff, so as not to interfere with the contract with the firm in Richmond, notice in writing was given the plaintiff, on April 4, 1881, that if plaintiff would give defendant a guaranty to sell the machines at factory prices, with freight added, the defendant would furnish the machines, to which the plaintiff refused to comply. To secure such guaranty, the defendant enclosed a bond to be signed by plaintiff, which was also declined, and this was done before any demand for the machines; and that plaintiff could not have sustained any damage; nor was defendant legally bound to furnish the machines after the plaintiff refused to sign the bond.

The following issues were submitted to the jury:

1. Did the defendant contract to sell and deliver to the plaintiff the machines mentioned in the complaint, at the prices stated?

2. Was the plaintiff able, and did he offer to comply with his part of the contract?

3. Did defendant fail to comply with its part of the contract?

4. What damages did plaintiff sustain by reason of defendant's failure to comply with the contract?

The plaintiff testified, among other things, that he was at Waynesboro when the defendant company was closing business, and made the said contract, which was then reduced to writing by the secretary of the company, and signed by both parties; that he contracted to sell two of the machines at list prices, and could have sold them all at those prices.

Lynch testified for plaintiff, that on the 19th of April, 1881, at the instance of plaintiff, he went to see defendant at its place of business, Waynesboro, and offered to pay for the machines, and demanded their shipment; he offered the money but defendant refused to accept it, or to ship the machines, unless plaintiff would give a bond not to sell them at less than list prices and freight charges; his expenses in going there were ten dollars; he did not agree, as agent of plaintiff, that the bond required would be given.

The defendant offered in evidence several letters between the parties. The only one of importance is that addressed by defendant to plaintiff, dated April 28, 1881, in which defendant says: "Yours of 26th received and noticed. We knew nothing of the transaction you speak of, until long after we sold you the machines, or rather contracted with you for them; and if you mean what you say, the bond will do you no harm and keep the price where it should be."

The defendant requested the court to charge the jury that the paper-writing offered, dated August 28, 1880, as the evidence of the contract, is so defective and uncertain that it cannot be enforced, and the plaintiff cannot recover upon it. Refused, and defendant excepted.

The court charged that if the jury believed the defendant had failed to comply with the contract made on the 28th of August, 1880, the plaintiff could recover; and that the measure of damages would be the difference between the price agreed upon and

the market value of the machines in Salisbury, and also the actual expenses the plaintiff had incurred by reason of defendant's breach of contract; and if they found for plaintiff, they might allow interest.

The jury responded to the first three issues in the affirmative, and assessed the plaintiff's damages at $667, with interest. Judgment; appeal by defendant.

*Mr. John S. Henderson*, for plaintiff.
*Messrs. McCorkle & Kluttz*, for defendant.

ASHE, J.. The only point presented by the record, as raised in the court below, is the exception of the defendant to His Honor's refusal to give the instructions asked, to-wit, that the paper-writing, dated August 28, 1880, as the evidence of the contract, is so defective and uncertain that it cannot be enforced, and as the plaintiff's demand is based thereon, the plaintiff cannot recover in this action. The instruction was properly refused.

The contract is sufficiently explicit to maintain the action. Any one who reads the paper-writing would at once understand its import: that it is an agreement on the part of the defendant to furnish the articles therein described, on or before May 1st, 1881, for which the plaintiff was to pay the defendant, at date of shipment, by his draft of that date, the amount of defendant's published prices for said articles, less by discount of 30 per cent. There is no uncertainty or ambiguity about it. The defendant understood it. There is no allegation, or even pretence in the answer that there was any such indefiniteness in the terms of the writing, as that insisted upon in the prayer for instructions and the argument of his counsel before this court.

One of the defences set up by the answer was, that the paper-writing was a mere request, on the part of the plaintiff to the defendant, to furnish the machines, and was not a contract. If not a contract, why sign it? "A contract is an agreement upon sufficient consideration to do or not to do a particular thing."

CRAWFORD v. MANUFACTURING COMPANY.

2 Blk., 440. The plaintiff proposed to the defendant, in writing, to pay it a certain sum if it would ship to plaintiff a certain number of machines, on or before the first of May, 1881. The defendant signed the writing, which is equivalent to saying, "I accept your proposition and will ship the articles according to your proposal." The defendant signed the writing, which, in the answer, is called a "letter," when it well knew it was not a letter, but was a contract, written by its secretary at its place of business in the state of Pennsylvania. It had recognized the writing as a contract, prior to the action. As late as April 28, 1881, in a letter of that date, the defendant wrote: "We knew nothing of the transaction you speak of, until long after *we sold you the machines, or rather contracted with you for them.*"

The only other defence was the lame and flimsy excuse that it had made a contract with a firm in Richmond, Virginia, to sell its machines, and that a compliance with the contract with the plaintiff would interfere with that arrangement, and, therefore, it could not comply.

The controlling motive in failing to perform its part of the contract was evidently the apprehension that if the machines were delivered, the plaintiff might undersell its Virginia agent; hence this unwillingness still to deliver the machines, unless the plaintiff would give the defendant a bond not to sell them for less than the factory prices—thus attempting to impose new conditions upon the plaintiff, which he thought unreasonable, and set up his refusal to accept them, as matter of defence to its liability to damages for the breach of its contract.

While we hold there is no error in the judgment of the superior court in regard to the liability of the defendant upon the contract sued on, we are of the opinion there was error in the judge's charge as to the measure of damages.

The expenses of the plaintiff in sending an agent to the defendant, at Waynesboro, was not such an expense as necessarily resulted from the contract.

The true measure of damages in this case is the difference in the contract price of the machines and their market value at Salisbury, on the 1st of May, 1881, less the cost of transportation.

The verdict is not to be disturbed except as to the damages, and to that end the case is remanded that an inquiry may be had as to the damages, in conformity to this opinion. The judgment will, therefore, be reformed so as to open that issue only, and in other respects it is affirmed. *Burton* v. *R. R. Co.*, 84 N. C., 192; *Lindley* v. *R. R. Co.*, *ante*, 547.

PER CURIAM.                    Judgment accordingly.