JOHNSTONE JONES v. A. T. MIAL and others.

*Contract, damages for breach of—Evidence of value of services— Quantum Meruit.*

Where the plaintiff, by exercise of his right of election, rescinded his contract with the defendant, and brought suit for damages for a breach thereof, *it was held* competent for the plaintiff to show, as upon a *quantum meruit,* what was agreed to be paid under the contract for the services of himself and his employees, in addition to the value of his personal labor, actual outlay and liability in the prosecution of the work, as bearing on the question of the measure of damages. See same case, 82 N. C., 252.

(*Dula* v. *Cowles,* 7 Jones, 290; *Russell* v. *Stewart,* 64 N. C., 487; *Faw* v. *Whittington,* 72 N. C., 321; *Houston* v. *Starnes,* 12 Ired., 313, cited and approved).

CIVIL ACTION tried at Spring Term, 1883, of WAKE Superior Court, before *Philips, J.*

The plaintiff appealed.

*Messrs. Fuller & Snow* and *D. G. Fowle,* for plaintiff.

*Messrs. Hinsdale & Devereux* and *J. B. Batchelor,* for defendants.

SMITH, C. J.   The plaintiff and defendants, on May 30, 1876, entered into an agreement, under the provisions of which the former undertook to begin, early in August, the publication of a weekly journal in the interest of the state grange, and to promote agricultural pursuits, and to prosecute the enterprise for

one year thereafter. In aid of this effort and to insure success, the defendants contracted to procure fifteen hundred paying subscribers, at the rate of two dollars per annum, whereof one thousand were to be furnished by the 1st day of October following, and the rest of the number at the end of the year. The other stipulations of the contract are not material in the solution of the present controversy.

The plaintiff started and continued the publication of the journal up to the 23d day of October, and was then ready and able to fulfill his contract, if he had been supplied with the funds from the subscription list which the defendants were to get up; but in this, the defendants failed, and the plaintiff, being disabled for want of means, discontinued the publication, and early in the next month sold out the materials on hand and his interest in the enterprise.

The series of issues prepared and submitted to the jury, except that inquiring of the damages, were all found by consent, and, among the responses that the defendants' breach of their stipulation to furnish the subscribers in support of the paper, and notice of intention not to comply with it, authorized the plaintiff to elect, and he did so elect on October 25, 1876, to hold the contract rescinded.

Upon the question of damages, the plaintiff, examined on his own behalf, proposed to give evidence as follows:

1. Having testified to his having employed an agricultural associate editor, fully competent for the required duty, but to whom he had paid nothing, the plaintiff offered to show what was to be paid under the contract for their services.

2. After stating that he had refunded a small sum ($7.50) to subscribers, the plaintiff proposed further to show what additional sums he was legally liable for to other subscribers.

3. Besides being allowed to prove the number of subscribers obtained before October 25th and the sums paid by them, the plaintiff offered to testify and estimate "the value of the name, good-will and subscription list, had the number of paying subscribers been procured according to the contract.

This further evidence was refused by the court, and exceptions are taken thereto.

The court charged the jury, "that the plaintiff was entitled to the actual expenses paid by him for running the paper, including suitable compensation for his own labor, and the $7.50 returned by him to subscribers; that from this amount must be deducted the sums received by him from subscriptions, advertising, and the amount for which he sold the paper."

To this instruction, based upon the admitted, and in.connection with the rejected testimony, the plaintiff also excepts, and thus we have before us the proper measure of damages, to which he is entitled, for consideration.

It may be true, as contended by the appellant, that being obstructed in carrying out his undertaking by the defendants' failure and refusal to supply the means essential to the continued publication of the journal, dispensed with his performance of his remaining obligation in the premises, and remitted him at once to his redress for the full amount of the injury sustained for the violation of the contract on the part of the defendants, as if the plaintiff had fulfilled his own stipulations. But it is not necessary to pass upon the question in that aspect.

It is affirmatively and by consent of parties found as a fact, that the plaintiff exercised his right of election, upon the defendants' failure, to rescind the contract and thus place himself in such relations towards them, as if no special contract had been made, and his expenditures had been made and services rendered at their request, and to be paid for at their proper value. The authorities are believed to be uniform that a special contract displaces any by implication, and both cannot co-exist at the same time. Unless the plaintiff has performed his contract, or offered, being able to perform it—an equivalent, or its performance has been dispensed with or rendered impracticable by the defendants, he cannot recover upon the contract actually made, but he may elect, upon the defendants' breach, to treat it as annulled thereby, and then he may recover upon the contract implied by law.

"The contract," says PEARSON, C. J., in *Dula* v. *Cowles*, 7 Jones, 290, " is considered to remain in force until it is rescinded by mutual consent, or until the opposite party does some act *inconsistent with* the duty imposed on him by the contract which amounts to an abandonment." *Russell* v. *Stewart*, 64 N. C., 487; *Faw* v. *Whittington*, 72 N. C., 321; *Giles* v. *Edwards*, 7 Term Rep., 181; *Davis* v. *Street*, 1 C. & P., 18.

Assuming then the damages to be recoverable on the basis of the actual outlay of the plaintiff, and the value of services in the absence of any specific agreed amount, was any of the rejected evidence competent upon this inquiry?

There lies no objection to the rule contained in the instructions to the jury, considered in abstract terms, and of them the appellant can have no just grounds of complaint, unless the jury were misled or liable to be misled, in their not being permitted to hear of the value of the services of the assistant editor employed to assist the plaintiff.

As we understand the record, the evidence was not received, because the sum due has not been, and may never be paid, and cannot, therefore, enter into the measure of the plaintiff's damages. This objection rests only upon the claim or count for money paid to the defendants' use, and the cases cited are all referable to a demand in this form.

But the claim to compensation for these services stands upon a different footing. These services are as truly rendered by the plaintiff as if he had given his personal labor, for his employees are acting on his behalf, and their services have been received and appropriated to the defendants' use, and constitute a charge for which they are as much liable as for the plaintiff's own individual services; and this, irrespective of the plaintiff's having made compensation to his employees.

The proper form of enquiry should have been, as upon a *quantum meruit*, what were these services of the associate in the conduct of the paper worth, rather than what price was agreed to be paid by the plaintiff, as the witness proposed to testify. But

we think the agreed compensation was some evidence of the value of their services, and its prompt rejection by the court upon the ground that payment was a prerequisite to the recovery, may have prevented the counsel from prosecuting the inquiry further, and extracting evidence of the value. The evidence seems to have been admissible upon the authority of the case of *Houston* v. *Starnes*, 12 Ired., 313.

We think it a proper case to set aside the finding upon the issue of damages alone, and direct a *venire de novo* as to that.

The judgment must therefore be reversed, and the cause will be remanded, to the end that the plaintiff's damages be assessed according to this opinion, and it is so ordered.

Error.                                                    Cause remanded.