DAVIDSON HARDWARE COMPANY v. DELKER BUGGY COMPANY.

(Filed 25 November, 1914.)

**Contracts—Sale of Goods—Loss of Profits—Measure of Damages—Trials—Questions for Jury.**

> Loss of profits on goods which the vendor contracted to deliver, but wrongfully failed to do, may be recovered by the purchaser as damages for the breach of the contract, when they were in reasonable contemplation of the parties and contract, and are ascertainable with a reasonable degree of certainty; and it is accordingly held, where the contract thus broken by the vendor was for the sale of thirty-six buggies, that evidence tending to show that the purchaser, a dealer, being unable to supply himself elsewhere in time for his trade, had lost the sale of thirty or more buggies based upon his last year's business, and the demand of his trade for the present season, at an average profit of $15 each, is competent to be submitted to the jury for their determination in fixing the amount of the plaintiff's recovery for the breach of the contract.

APPEAL by plaintiff from *Lane, J.,* at May Term, 1914, of DAVIDSON.

Civil action. There was evidence on part of plaintiff tending to show that defendant company contracted and agreed with plaintiff to ship plaintiff thirty-six vehicles in two minimum car-load lots, the first to be delivered not later than 1 February, 1913, and the second, 1 May, 1913, upon specifications set forth in a written order and agreement between the parties; that defendant company wrongfully failed to deliver said buggies, and plaintiff, who was engaged in the general hardware business, and ready and able to dispose of buggies at a profit, lost the sale of some thirty or forty of the buggies, and the profit on each was $15.

On the question of the amount of damages, the plaintiff offered witnesses who testified as follows:

"I was president of Davidson Hardware Company, and it was, at the times mentioned and had been for some years prior to 1 February, 1913, engaged in general hardware business, farm implements, and buggies; had been selling buggies since February, 1910, I believe; had handled buggies manufactured by defendant company during year of 1912. On 1 February, 1913, we had warehouse in rear of store and had same force employed to handle buggies. Mr. Young was salesman at the time. Plaintiff did not get any of the buggies from defendant under the contract; first notice we got of refusal to ship was some time in February, 1913. The effect of our failure to get these buggies was a loss of the sale of probably thirty or forty buggies. We bought the buggies to sell at a profit."

Q. "How many buggies, in the ordinary course of business, would you sell in the spring trade?" A. "Judging from the prior year to that, and from this year, forty to fifty. Our best buggy trade during the year is

in March, April, and May. The buggies under contract were runabouts, open buggies, general buggies. We sold such buggies at a profit of about $15 each."

Q. "How much were you damaged, if at all, by the failure to receive these car-loads or shipments of buggies?" A. "$15 a job figures up $540."

Cross-examination: "Do not know positively how many applications had for buggies from that time till first of May. Do not know how much would have made on any particular buggy, in any particular trade, only on the average the year, this year and the prior year."

Baxter Young, for plaintiff, testified: "Was secretary and treasurer of plaintiff. The first notice we got that defendant would not ship the buggies under this contract was about the middle of February, 1913. It took us till 4 May or 5 May, 1913, to get other buggies to supply the demand for buggies in our business. In the meantime we were unable to supply the demand for buggies in our business."

Q. "What profits were made on sale of buggies, these buggies, buggies of this kind?" A. "Generally made $15 a buggy."

Q. "In ordinary course of business how many buggies could you have sold?" A. "According to this year and last year, we sold forty or fifty. After we failed to get buggies of defendant, handled Rock Hill buggies; had handled Delker Bros. buggies one year. It was a good selling buggy. Had not contracted with any purchaser to sell any of the buggies."

Redirect examination: Q. "State, in the course of business, what was your manner of selling buggies, whether you took orders or sold a man a buggy." A. "Sold them retail, the same as you would shoes or groceries or anything a man comes in to buy and you sell him if you can."

The court charged the jury that, on the evidence, if they believed this, defendant had broken the contract, but there were no facts in evidence to justify more than nominal damages of 5 cents, and plaintiff excepted and appealed.

*E. E. Raper for plaintiff.*
*Walser & Walser for defendant.*

HOKE, J., after stating the case: It is sometimes said that loss of profits to arise from a good bargain may not be considered in estimating the damages from breach of an executory contract; but, on examination, the position will be found to obtain only where, in a given instance, from the uncertainties of trade, the fluctuations of prices, or the like, these anticipated profits present too many elements of uncertainty to be made the basis of a satisfactory business adjustment. This, however, is not because they are profits, but by reason of their uncertainty; and where it appears that such profits were in reasonable contemplation of the par-

ties and the contract and evidence relevant to the inquiry afford data from which the amount may be ascertained with a reasonable degree of certainty, the profits to arise from a good bargain may be recovered.

The position is very well stated by *Selden, J.,* in *Griffin v. Colver,* 16 N. Y., pp. 489, 491, as follows: "It is a well established rule of the common law that damages recoverable for a breach of contract must be shown with certainty, and not left to speculation or conjecture; and it is under this rule that profits are excluded from the estimate of damages in such cases, and not because there is anything in their nature which should *per se* prevent their allowance. Profits which would certainly have been realized but for the defendant's fault are recoverable; those which are speculative and contingent are not. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed." And, as shown by further reference to the authorities, this certainty referred to by the learned judge does not mean "mathematical accuracy," but a reasonable certainty. Sutherland on Damages; Hall on Damages, pp. 70-71.

In this last citation the author says: "A difficulty arises, however, when compensation is claimed for prospective losses in the nature of gains prevented; but absolute certainty is not required. Compensation for prospective losses may be recovered when they are such as in the ordinary course of things are reasonably certain to ensue. Reasonable means reasonable probability. When the losses claimed are contingent, speculative, or merely possible, they cannot be allowed."

The distinction here adverted to is very well brought out in *Machine Co. v. Tobacco Co.,* 141 N. C., 284, *Associate Justice Walker* delivering the opinion. In that case plaintiff, manufacturer of a cigarette machine, sued defendant for a breach of contract in failing to exhibit plaintiff's machine at the St. Louis Exposition, and claimed, as an element of his damages, the loss of profits incident to the sales he might have made if his machine had been exhibited according to the contract, and there being no data afforded either by the contract or evidence relevant thereto from which profits could be ascertained, this source of damage was disallowed, and it was thereupon held:

"1. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, as may fairly be supposed to have entered into the contemplation of the parties when

they made the contract, that is, such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.

"2. The law seeks to give full compensation in damages for breach of contract, and in pursuit of this end it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case, furnishes a standard by which their amount may be determined with sufficient certainty.

"3. In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as part of the compensation."

While profits were rejected as an element of damages in this instance, there being no data whatever from which they could be estimated, the right of recovery where same could be ascertained with reasonable certainty is clearly recognized, and the principle has been frequently approved in decisions of this Court. Thus, in the recent case of *Steel Co. v. Copeland,* 159 N. C., 556, plaintiff was allowed to recover for profits on a car-load of fertilizer, ordered for the trade. True, in that case the Court referred to the fact that the selling price of this guano was fixed, but this was only as affording the greater facility for ascertaining the amount of damages, and not at all as controlling on the question. A like principle is fully recognized in *Wilkinson v. Dunbar,* 149 N. C., 20, and other cases.

In the present instance there was evidence offered tending to show that plaintiff, doing a general hardware business, including the purchase and sale of vehicles, had contracted with the defendant for the delivery for his spring trade, in 1913, of thirty-six buggies, two minimum car-load lots, and which defendant wrongfully failed to deliver; that plaintiff had handled the buggy the previous year and found it to be a good selling buggy; that if they had been delivered he could have sold to his trade thirty or forty buggies and at a profit of not less than $15; that he was not able to obtain other buggies till late in the season, and could not procure enough then to supply the demand in his trade, and, applying the principles as heretofore stated, we are of opinion that the plaintiff should have been allowed to present his case to the jury on the question of substantial damages, and that his testimony as to profits should be considered by the jury and allowed such weight and effect as it should properly receive.

While we have treated this case as a question of profits to arise out of sales to be made by the purchaser, because the parties have so presented it and the principles applicable are substantially the same, as a matter

of fact, this is only a method of arriving at the pecuniary value of the principal contract to plaintiff which defendant has broken, and this value plaintiff is always entitled to recover to the extent that it was in the reasonable contemplation of the parties and capable of ascertainment with a reasonable degree of certainty. *Wilkinson v. Dunbar, supra; Masterton v. Mayor,* 7 Hill, 61.

For the error indicated, the plaintiff is entitled to a new trial of the cause, and it is so ordered.

New trial.