SPROUT, WALDRON AND COMPANY v. J. L. WARD and J. M. CANOY,
TRADING AS WARD AND CANOY.

(Filed 11 May, 1921.)

**1. Contracts— Breach— Damages— Gains Prevented—Vendor and Purchaser.**

The principle upon which a recovery of damages for gains prevented as well as loss sustained by the breach of a party to the contract applies to such damages as may fairly be supposed to have entered into the contemplation of the parties at the time the contract was made, and such as may naturally be expected to follow its violation, both certain in their nature and in regard to the cause from which they proceed.

**2. Same—Evidence—Appeal and Error—Reversible Error.**

Where, in an action to recover the purchase price of a flour mill, the defendant sets up as a counterclaim in damages that the mill in question caused him a loss of patronage because it would not make good flour, whereby the plaintiff had breached his contract, the testimony of a witness in defendant's behalf, on the measure of damages, that he was not certain that he would otherwise have patronized the mill, but it was "likely" that he would have done so, is too uncertain for the jury to find an affirmative fact thereon, and its admission is prejudicial to the plaintiff and constitutes reversible error.

**3. Same—Warranty.**

The measure of damages for the vendor's breach of contract in furnishing the purchaser with a flour mill that would not grind good flour is the difference between the value of the mill as the vendor contracted it would be, depending upon the nature of the contract of sale, or the warranty expressed or implied, and the value of the one delivered.

APPEAL by plaintiff from *Lane, J.,* at the July Term, 1920, of RANDOLPH.

Plaintiff contracted with defendants to sell them a roller-mill outfit for $1,225, to be paid in certain specified installments. It shipped the mill to defendants, who alleged that it was so defective that it would not make good flour, and by reason thereof they failed to get patronage which otherwise they would have received, some of defendants' witnesses testifying that they would have had their wheat ground at defendants' mill "if they had made as good flour there as was made anywhere else," and one of their witnesses, Marcus Briles, was permitted to answer, over plaintiff's objection, the following question: "Q. State whether or not you would have patronized that mill if it had made good flour? A. I could not say for certain, it is likely that I would." One of the defendants was allowed to testify that they could have made a profit of $13 or $15 per day if the mill had been what it was represented to be. This estimate was not based on the existence of any contracts to grind at the mill, or on any trustworthy data, but evidently upon the opinion or

conjecture of the witnesses as to what patronage the defendants would get, and upon the testimony of witnesses who stated they would have had their wheat and corn ground there if the grinding was done as well as at other mills.

The judge stated to the jury that there was no evidence as to what was the market price of the toll wheat or corn. The principal defect in the mill was in the shape of the reel, which should have been round. This was not rectified by plaintiff for some time after the mill was received by the defendants.

Issues were submitted to the jury, and a verdict of $500 returned by them for the defendants. Judgment rendered thereon, and plaintiff appealed.

*H. M. Robins for plaintiff.*
*J. A. Spence for defendants.*

Walker, J., after stating the material facts: The judge erred, at least, in receiving the testimony of the witness, Marcus Briles, above set forth. Conceding for the sake of discussion that it was competent to show by witnesses that they would have had their flour and corn ground at defendants' mill if it had made good flour, the testimony of Briles should not have been admitted for that purpose, as he was not certain himself that he would have patronized the mill under the circumstances stated in the question, and it was not more than "likely" that he would. If he was not certain, how could we expect the jury to be certain about it and to consider his answer in determining the amount of damages. And they may have considered it, and most probably did, for the court admitted it as some proof of the profits that would have been realized.

We held in *Machine Co. v. Tobacco Co.,* 141 N. C., 284 (affirmed in *Hardware Co. v. Buggy Co.,* 167 N. C., 423):

"1. Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed.

"2. The law seeks to give full compensation in damages for breach of contract, and in pursuit of this end it allows profits to be considered when the contract itself, or any rule of law, or any other element in the case, furnishes a standard by which their amount may be determined with sufficient or reasonable certainty.

"3. In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, or

otherwise, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as part of the compensation."

In the first case the plaintiff had contracted for the exhibition of certain cigarette machines, manufactured by himself, at the St. Louis Exposition, and defendant broke his contract by failing to exhibit the machines sent to him for the purpose, and plaintiff claimed as damages the loss of profits he might have made if the contract had been complied with by defendant, there being no sufficient data afforded by the contract itself or by evidence relevant thereto by which profits could be ascertained, and for this reason the recovery of profits was disallowed. With respect to somewhat similar facts, the Court (by *Justice Connor*) said, in *Coles v. Lumber Co.,* 150 N. C., 183 : "The suggestion that if the yard had been relieved of the lumber which plaintiff was to take, the defendant could or would have sawed other lumber, piled it on the yard, and sold it at a profit is too speculative and remote. Too many contingencies are involved to make it a safe measure or element of damage. If one is under contract obligation to remove lumber from a yard at a given time and fails to do so, in the absence of any special circumstances entering into the contract when made, he is liable for the use and occupation; that is, a fair rental value of the yard. In ascertaining its rental value, evidence of the manner in which it was used or capable of being used would be competent." It was likewise said in *Jones v. Call,* 96 N. C., at pp. 344 and 345 : "There are many contingencies attendant upon all business—the possible loss by fire, the breaking of machinery, death, sickness, and other causes, may interrupt or suspend its prosecution. These cannot be estimated in advance, and profits must be largely dependent upon them. It is for this reason that the actual, not conjectural, loss constitutes the plaintiff's claim to compensation."

There are other cases decided by this Court much to the same effect, or bearing more or less upon this question. *Willis v. Branch,* 94 N. C., 149; *Johnson v. R. R.,* 140 N. C., 580; *Walser v. Tel. Co.,* 114 N. C., 440; *Tompkins v. Cotton Mills,* 130 N. C., 350; *Sharpe v. R. R., ibid.,* 613; *Foard v. R. R.,* 53 N. C., 235; *Reiger v. Worth,* 127 N. C., 230. It is not that the party suffering a loss from another's breach of contract should not be compensated for the same, but it is the difficulty of ascertaining the measure of compensation by reason of the uncertain and speculative nature of the damages when profits that would have been realized but for its breach are claimed as an element of damages. If allowed where they are uncertain, the jury have no standard by which to gauge the damages, but are left to pure conjecture, and perhaps a

mere guess. This would be a grave injustice to the party who has to pay them, and may far exceed the proper and just compensation of the other party. We said in *Machine Co. v. Tobacco Co., supra,* at pp. 289 and 290: "Where one violates his contract he is liable for such damages, including gains prevented as well as losses sustained, which may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, such as might naturally be expected to follow its violation, and they must be certain, both in their nature and in respect to the cause from which they proceed. *Ashe v. DeRosset,* 50 N. C., 299; *Griffin v. Colver,* 16 N. Y., 489. It is the rule last stated which principally raises the doubt as to whether profits of the future should be included in any estimate of damages. They may be necessary to completely indemnify the injured party, and they may also answer the other requirement, in that the loss of them may naturally be expected to proximately result from a breach of the contract; but there still remains another important element to be considered, and that is whether there is any reliable standard by which they can be ascertained, for we have seen that the damages must be certain, and this certainty, which is required, does not refer solely to their amount, but also to the question whether they will result at all from the breach. It is clear that whenever profits are rejected as an item in the calculation of damages, it is because they are subject to too many contingencies, and are too dependent upon the fluctuations of markets and the chances of business to constitute a safe criterion for an estimate of damages."

The court erred in admitting the testimony of the witness, Marcus Briles. The other objections need not be considered, as evidence may be presented at the next trial of a more certain and definite character. The error above indicated is sufficient to entitle the plaintiff to another trial, and in the exercise of our discretion we extend it to all of the issues, as the questions are so correlated that the case can be better tried in that way.

Defendants may recover as their damages, if satisfied therewith, the difference between the value of the mill as plaintiffs contracted it should be and the value as it was when delivered. *March v. McPherson,* 105 U. S., 709; *Parker v. Fenwick,* 138 N. C., 209; *Mfg. Co. v. Oil Co.,* 150 N. C., 150; *Guano Co. v. Livestock Co.,* 168 N. C., 442. The measure of damages in such a case would depend, of course, upon the nature of the contract of sale, or the warranty express or implied.

New trial.