LEWIS C. LAWRENCE v. G. L. STROUPE.

(Filed 29 January, 1965.)

**1. Landlord and Tenant § 8—**

Evidence that lessee subleased for the unexpired portion of the term of one year, for which lessee had paid the rent, and that sublessee paid the lessee therefor an amount equal to one-half of the yearly rental, with further evidence that lessor knew of the sublease prior to the time of renting to a third party, who took possession, *held* sufficient to make out a *prima facie* case in the sublessee's action against the lessor, but the sublessee is entitled to only nominal damages in the absence of evidence fixing the amount of damages with any degree of certainty.

**2. Landlord and Tenant § 2—**

Plaintiff's evidence to the effect that his agreement with the owner of property to lease it at the expiration of the current yearly term was made subject to the condition that plaintiff could obtain an assignment from the lessee for the unexpired portion of that term, and that plaintiff did not notify the owner that he had been successful in obtaining the assignment until the owner was in the act of leasing it to a stranger, and that plaintiff did not tender any rent until some three months after plaintiff knew of the lease to the stranger, *held* insufficient to establish a lease contract.

**3. Damages § 14—**

In an action for breach of contract to lease land for grazing cattle, plaintiff's evidence that he purchased 80 head of cattle intending to graze them on the land, but that he did not know what he paid for the cattle and did not know what he sold them for, but that he had lost money, is insufficient predicate for an award of more than nominal damages, the burden being upon plaintiff to establish the amount of damages with reasonable certainty.

APPEAL by plaintiff from *Bickett, J.,* February Civil Session 1964 of LEE.

This is a civil action to recover damages for the alleged wrongful eviction of plaintiff from land allegedly subleased by plaintiff from defendant's lessee, in which the plaintiff alleges two causes of action: (1) That by preventing his entry on the land during the period from October 1961 to 1 May 1962, he was damaged in the sum of $1,000.00; and (2) that his negotiations with the defendant, beginning on or about 15 September 1961, resulted in a lease on the land involved from 1 May 1962 until 1 October 1963, and when defendant leased the premises to another party, he was damaged in the sum of $2,500.00.

On 22 April 1950, G. L. Stroupe, defendant, leased for a period of eight years a tract of land on U. S. 421 to L. P. Wilkins for an agreed rental of $100.00 per year, payable in advance. Wilkins leased the land for the purpose of grazing cattle thereon.

In addition to the agreement to pay the stipulated rental, Wilkins agreed to fertilize and seed the land, keep the weeds cut, build the necessary fences, and keep the property in a good state of repair.

When the original term of the lease expired in 1958, Wilkins and defendant renewed the lease on an annual basis with the same terms applicable with respect to fertilization, seeding, repair of fences, *et cetera,* but the yearly rental was increased to $400.00.

On 12 May 1961, the rental was paid which would have extended the lease period from 1 May 1961 to 1 May 1962. About 1 October 1961, Wilkins removed his cattle from the leased premises and did not return to the premises at any time subsequent thereto. During October 1961, Lewis C. Lawrence, plaintiff, agreed to sublease Mr. Wilkins' un-

expired term for the Stroupe land. Plaintiff gave Wilkins a check for $200.00 on 28 December 1961 for the sublease, but plaintiff did not put any cattle on the land at any time, nor did he make any attempt to fertilize the land or keep the land and fences in a state of good repair. Plaintiff testified that it was not until 28 February 1962 that he wanted to put his cattle on the defendant's premises.

The evidence tends to show that the plaintiff approached the defendant in September 1961, as the defendant entered the intersection of Endor and Wicker Streets in Sanford in his car, and undertook to discuss the subject of a lease while defendant was holding up traffic. No conclusion whatever was reached, and the defendant drove off. The next week, the plaintiff ran into the defendant again on Wicker Street in Sanford and inquired of the defendant as to what he had decided to do. The defendant replied, "I'd just as soon rent it to you, Lawrence, as anybody." The plaintiff then stated, "* * * I don't want it under a lease like L. P. has got it, * * * I want it from the first of May until the first of October 1963 * * *. * * * (I)f I can't rent it from you, I don't want L. P.'s — if I can get the two I will be glad to rent it." The reply of defendant, according to the testimony of plaintiff, was, "If you are going to get it from L. P., I will rent it to you for $400.00 or $600.00 to the first of October '63." The plaintiff said, "All right," and then defendant walked away, and plaintiff hollered, "Mr. Stroupe, when do you want your money?" Mr. Stroupe is purported to have said, "Any time." Plaintiff then never saw or contacted the defendant again for several months, in fact, not until the property had been leased to another party. The evidence further tends to show that at the time Lawrence and Stroupe were having their negotiations, the plaintiff had not contracted with Wilkins for the unexpired term under the lease.

In the meantime, in January 1962, the defendant and Paul Pope went to the office of L. P. Wilkins, the original lessee, and the defendant informed Mr. Wilkins that he had abandoned his lease; then for the first time, Mr. Wilkins informed the defendant that he had assigned his lease to Mr. Lawrence, the plaintiff. Defendant informed Mr. Wilkins that he had not leased the land to Mr. Lawrence.

The defendant leased the land in January 1962 to Paul Pope, who took possession, placed cattle on the premises, and put locks on the gates to the pasture.

The plaintiff testified that he bought 80 head of cattle for the purpose of putting them to pasture on the leased land. According to the lease, the premises consisted of approximately one hundred acres, and with respect to the cost of the cattle placed thereon and the losses sustained, the cost of complying with the terms of the lease with respect to cutting the weeds, seeding and fertilizing the pasture land, the plain-

tiff testified as follows: "I do not know how much I paid for that herd of 80 cattle, but they averaged around $100.00 a head. * * * I do not know what I paid for them. * * * I do not know what I sold them for. * * * I sold them myself. I don't know who I sold them to * * * I do not know what he paid me for them * * * I know I lost money."

In connection with the other requirements of the lease, the plaintiff testified, "From the standpoint of time, machinery and labor costs, the expense of mowing this pasture to cut down the grass and weeds would be anywhere from a hundred to a hundred and fifty dollars. The costs of fertilizing this pasture with the equipment I had and the fertilizer that I had available, would be about $12.00 to $15.00 per acre." None of this expense was incurred by the plaintiff.

At the close of plaintiff's evidence, the defendant moved for judgment as of nonsuit as to each cause of action. The motion was allowed.

From the judgment entered, the plaintiff appeals, assigning error.

*Hoyle & Hoyle for plaintiff appellant.*
*Gavin, Jackson & Williams for defendant appellee.*

DENNY, C.J. It is clear from the evidence on this record that the defendant received and accepted from L. P. Wilkins the full amount of the agreed rental for the year beginning 1 May 1961 to 1 May 1962, in the sum of $400.00. It is likewise clear that in January 1962, before the defendant leased the premises to Paul Pope on 19 January 1962, L. P. Wilkins informed the defendant that he had assigned his lease for the unexpired period from October 1961 to 1 May 1962 to the plaintiff, Lewis C. Lawrence.

At the trial below, the plaintiff offered evidence to the effect that he paid L. P. Wilkins the sum of $200.00 for the unexpired portion of his lease. We think this was sufficient to make out a *prima facie* case on the first cause of action. *Pappas v. Crist*, 223 N.C. 265, 25 S.E. 2d 850. However, the evidence with respect to damages is so vague and uncertain that plaintiff is not entitled to recover more than nominal damages. Furthermore, the defendant testified that he did not desire to occupy the premises prior to 28 February 1962. At that time only sixty days were left under the terms of the assigned lease.

As to the second cause of action, in our opinion the evidence is not sufficient to establish a contract between the parties with respect to the premises involved for the period beginning 1 May 1962 to 1 October 1963. The plaintiff made it plain to the defendant that he did not want a contract for the later period unless he could obtain the property for the unexpired term held by the lessee L. P. Wilkins; and it is equally clear that he had no contract with Wilkins at any time during

the negotiations between the parties in September 1961. *Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897, 149 A.L.R. 201.

The plaintiff never notified the defendant that he had been successful in obtaining an assignment of the unexpired portion of the lease from Wilkins; defendant first learned from Wilkins in January 1962 that he had made such an assignment. This was more than four months after the last conversation between the plaintiff and the defendant in September 1961. Furthermore, the plaintiff never tendered the rent which he alleged was agreed upon in September 1961, until 17 April 1962, which was 48 days after the alleged breach and nearly three months after plaintiff knew the defendant had leased the premises to Paul Pope. Moreover, if it should be conceded that there was a contract for the extended term, the plaintiff's evidence is insufficient to support a recovery of damages in any substantial amount.

"In an action for damages for a breach of contract, in the absence of some standard fixed by the parties when they made their contract, or otherwise, the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as a part of the compensation." *Sprout v. Ward,* 181 N.C. 372, 107 S.E. 214; *Hardware Co. v. Buggy Co.,* 167 N.C. 423, 83 S.E. 557; *Machine Co. v. Tobacco Co.,* 144 N.C. 421, 57 S.E. 148.

Even so, in our opinion, the ruling of the court below with respect to the second cause of action should be affirmed, and it is so ordered.

The judgment as of nonsuit on the first cause of action is reversed. On the second cause of action the judgment as of nonsuit is affirmed.

Reversed as to first cause of action.

Affirmed as to second cause of action.