WEYERHAEUSER COMPANY v. GODWIN BUILDING SUPPLY CO., INC.

No. 69

(Filed 10 May 1977)

1. Contracts § 29.2— breach of contract — damages

Such damages are allowed for breach of contract as may reasonably be supposed to have been in the contemplation of the parties when the contract was made or which will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed.

2. Contracts § 29.2; Damages § 3.5— breach of contract — lost profits

While damages for breach of contract may include, in a proper case, damages for lost profits, such damages may not be awarded where the evidence permits no more than speculation.

3. Contracts § 29.2; Damages § 3.5— breach of contract — lost profits — insufficiency of evidence

The trial court erred in permitting the jury to consider possible lost profits as an element of damages in a breach of contract action where there were no facts offered in evidence to support the probability that there would be profits or the estimate of their amount.

4. Appeal and Error § 62.2— partial new trial on damages issue

A partial new trial on the issue of damages alone should not be awarded in an action for breach of contract where the jury's verdict provides no basis for ascertaining which of several theories of the

breach supported its award of damages and where the measure of damages might vary according to the breach proven.

5. **Contracts § 21.1; Trial § 42— jury findings that both parties breached contract**

     A jury finding that defendant had breached the contract sued on did not preclude a jury finding that plaintiff had also breached the contract where the jury did not find that defendant's breach was material or that it excused plaintiff's performance.

ON petition for discretionary review of a decision of the Court of Appeals, 29 N.C. App. 235, 223 S.E. 2d 837 (1976), which, on plaintiff's appeal from a judgment of *Hall, J.,* entered at the 1 April 1975 Session of HARNETT County Superior Court, found error and remanded the case for a new trial solely on the issue of damages. Docketed and argued as Case No. 67 at the Fall Term 1976.

*Edgar R. Bain and Robert W. Hutchins, Attorneys for plaintiff appellant.*

*Johnson and Johnson by W. A. Johnson, Attorneys for defendant appellee.*

EXUM, Justice.

[4] We allowed this petition to determine whether a partial new trial on the issue of damages alone should be awarded in an action for breach of contract where the jury's verdict provides no basis for ascertaining which of several theories of the breach supported its award of damages. We hold that in such a case where the measure of damages might vary according to the breach proven it is not proper to allow a partial new trial solely on the damages issue.

This case originated in an action by plaintiff Weyerhaeuser to recover payment for materials and services rendered to defendant Godwin Building Supply, Inc., (hereinafter "Godwin") pursuant to a written contract. Godwin counterclaimed for damages allegedly resulting from Weyerhaeuser's breach of the contract. The jury found that both parties had breached the contract and awarded damages of $7,541.00 to plaintiff and $100,000.00 to defendant. Defendant did not perfect its appeal. Plaintiff's appeal concerns only the counterclaim.

The evidence adduced at trial tended to show plaintiff contacted O. W. Godwin, Jr., president and executive manager

---
---

of Godwin in January 1968 for the purpose of interesting Godwin in participating in the Weyerhaeuser Registered Homes Program. Negotiations resulted in the signing by both parties of a "Marketing Agreement" on May 9, 1968. Godwin proceeded to lease a site in Carpenter, North Carolina, to build a plant, equip it with machinery and materials, staff it and generally put it in readiness to begin the manufacture of components for Weyerhaeuser Registered Homes.

Not a single home was built pursuant to the agreement. Defendant's testimony attributed this to Weyerhaeuser's failure to find a primary investor to provide mortgage financing. There is abundant testimony that both parties anticipated that the financing of the homes would depend on Weyerhaeuser's finding a primary investor for a 75 percent first mortgage. If agreeable to the first mortgagee, Weyerhaeuser would take a second mortgage of 15 percent. The primary investor would service both mortgages in return for a service fee paid by Weyerhaeuser. This procedure was apparently Weyerhaeuser's general custom in financing Weyerhaeuser Registered Homes.

In this case, Godwin and others testified that he was told Weyerhaeuser would secure the first mortgage commitments from Metropolitan Life Insurance Company. The commitments were to be provided through local correspondents, in this case Stockton White and Company for the Raleigh-Durham-Chapel Hill area and Branch Banking and Trust Company for the Wilson area. No commitments were ever provided, apparently because Metropolitan Life had withdrawn from the North Carolina market due to the effects of this state's usury laws in an atmosphere of rising interest rates. The contract was terminated by Weyerhaeuser on October 21, 1969.

Only five issues were submitted and answered by the jury as follows:

"1. Did the plaintiff and the defendant enter into a contract as alleged in the complaint?

"Answer: Yes

"2. Did the defendant breach the contract by failing to make payments as required by the terms of said contract?

"Answer: Yes

"3. What amount, if any, is the plaintiff entitled to recover of the defendant?

"Answer: $7,541.00

"4. Did the plaintiff breach the contract entered into by the plaintiff and the defendant?

"Answer: Yes

"5. What amount of damages, if any, is the defendant entitled to recover of the plaintiff?

"Answer: $100,000.00"

Judgment was entered on the verdict.

In his instructions on the fifth issue, the trial judge properly charged that "in no event may an award of damages be based on conjecture, speculation or guess." After some elaboration on this point, however, he proceeded to give the following instruction:

"Now, recovery for the loss of future profits may be had where they are reasonably certain in character and are the proximate result of the breach of contract. The proof must pass beyond the realm of conjecture, speculation or opinion not founded on facts and must consist of actual facts which a reasonably, accurate conclusion regarding the cause and the amount of the loss can be logically and rationally determined."

The Court of Appeals held this instruction to be error, requiring a partial new trial ·solely on the issue of damages on the counterclaim. We agree that the giving of the instruction was prejudicial error. The only evidence in the record even arguably pertinent to loss of future profits was testimony of two witnesses that W. T. Roetzer, an employee of Weyerhaeuser, had prepared an $800,000.00 projected budget for Godwin, showing a projected profit for the first year of $80,000.00. Instead, Mr. Godwin claimed the business actually suffered a net loss of $93,432.22 during the fiscal year ending April 30, 1969. This evidence provides no basis for an award of damages for lost profits, since any estimate of Godwin's expected profits must on the evidence presented be based solely upon speculation.

[1, 2]  This Court has held that such damages are allowed for breach of contract as "may reasonably be supposed to have been

Weyerhaeuser Co. v. Supply Co.

in the contemplation of the parties when the contract was made," *Troitino v. Goodman,* 225 N.C. 406, 412, 35 S.E. 2d 277, 281 (1945), or which "will compensate the injured party for the loss which fulfillment of the contract could have prevented or the breach of it has entailed," *Norwood v. Carter,* 242 N.C. 152, 155, 87 S.E. 2d 2, 4 (1955). This measure has been held to include, in a proper case, damages for lost profits. *Service Co. v. Sales Co.,* 259 N.C. 400, 131 S.E. 2d 9 (1963) ; *Tillis v. Cotton Mills* and *Cotton Mills v. Tillis,* 251 N.C. 359, 111 S.E. 2d 606 (1959).

Such damages, however, may not be awarded where the evidence permits no more than speculation. "Absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion." *Service Co. v. Sales Co., supra* at 417, 131 S.E. 2d at 22, quoting *Tillis v. Cotton Mills, supra.* The difficulty of showing, with any degree of reliability, either the probability of the occurrence of profits or their amount, has led to the observation that ordinarily "[i]n an action for damages for a breach of contract . . . the law will not permit mere profits, depending upon the chances of business and other contingent circumstances, and which are perhaps merely fanciful, to be considered by the jury as a part of the compensation." *Lawrence v. Stroupe,* 263 N.C. 618, 622, 139 S.E. 2d 885, 887-88 (1965) ; *Steffan v. Meiselman,* 223 N.C. 154, 25 S.E. 2d 626 (1943).

[3] Certainly, in the case at bar, where there were no facts offered in evidence to support the probability that there would be profits or the estimate of their amount, it was error to allow the jury to consider possible lost profits as an element of damages.

[4] This conclusion leads us to the consideration of the propriety of remanding this case for a new trial solely on the issue of damages. We recognized long ago that a new trial on the issue of damages alone may be allowed in a contract case. *See Crawford v. Manufacturing Co.,* 88 N.C. 554 (1883) ; *Jones v. Mial,* 89 N.C. 89 (1883). Our most recent definitive statement on whether a partial new trial should be awarded was made by Justice Huskins writing for the Court in *Robertson v. Stanley,* 285 N.C. 561, 568-69, 206 S.E. 2d 190, 195 (1974) : "Courts are reluctant to grant a new trial as to damages alone unless it is

clear that the error in assessing damages did not affect the entire verdict. The rule is stated as follows: 'As a condition to the granting of a partial new trial, it should appear that the issue to be tried is distinct and separable from the other issues, and that the new trial can be had without danger of complications with other matters.' " (Citations omitted.) The Court quoted with approval *Lumber Co. v. Branch*, 158 N.C. 251, 73 S.E. 164 (1911) as follows: " 'It is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial. It will generally do so when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication.' . . . *Accord, Paris v. Aggregates, Inc.*, 271 N.C. 471, 157 S.E. 2d 131 (1967) ; *Jenkins v. Hines Co.*, 264 N.C. 83, 141 S.E. 2d 1 (1965)." *Robertson v. Stanley, supra* at 568, 206 S.E. 2d at 195. We have also said, "Before a partial new trial is ordered, 'it should clearly appear that no possible injustice can be done to either party.' *Jarrett v. Trunk Co.*, 144 N.C. 299, 56 S.E. 937 (1907)." *Id.*

In considering the application of these rules to the facts, we perceive some possibility of confusion resulting from a partial new trial. Defendant alleged in its final Amended Answer and Counterclaim several breaches of the contract as follows:

"17. That the plaintiff willfully and wrongfully breached and violated its contract and agreement with the defendant in that, among other things:

"(a) It failed to provide or arrange marketing services as required by its contract and agreement with the plaintiff;

"(b) It failed to arrange ninety per cent (90%) conventional financing as it had contracted and agreed to do;

"(c) It failed to assist the defendant in arranging interim construction and mortgage financing for Weyerhaeuser Registered Homes as it had contracted and agreed to do; and

"(d) It failed to provide plans and planning services as it had contracted and agreed to do."

We cannot ascertain from the record the nature of the services anticipated by the parties to be performed by Weyer-

haeuser under the contractual provisions which obligated it to "provide or arrange marketing services," or to "provide plans and planning services." Were these services to have been required only when there were customers financially able and willing to buy the homes for which Godwin was manufacturing components or in order to help Godwin build homes to attract the customers? The pertinent portion of the contract, to which all of defendant's allegations of breach obviously relate, is of little assistance. It provides:

"3. Weyerhaeuser shall provide Dealer with or arrange the following marketing services:

(a) Recommended methods for operation of a dealer home design service.

(b) A planning service which will help Dealer to adapt conventional plans into modular plans and shop drawings.

(c) The Weyerhaeuser Registered Home Architectural Advisory Service.

(d) A management manual of recommended best procedures covering:

I. Methods of accounting

II. Scheduling procedures

III. Other general management procedures

(e) Business management assistance to more efficiently manage the home package operation.

(f) Manuals on recommended methods for fabricating and erecting components.

(g) Production engineering assistance to enable Dealer to more efficiently produce, package, and transport the materials comprising the WRH component package.

(h) Technical personnel for field visits as required in order to insure proper quality control of shop fabrication of components for the Weyerhaeuser Registered Home.

---

Weyerhaeuser Co. v. Supply Co.

---

(i) An advertising program, adapted to meet Dealer's specific needs and local requirements, to the extent provided in Section 1.C.1.

(j) Through a Weyerhaeuser approved correspondent system, assist Dealer in arranging interim and permanent mortgage financing for Weyerhaeuser Registered Homes."

The evidence further obfuscates the issues. The plaintiff variously contends: defendant must have constructed a model home before Weyerhaeuser incurred any obligation in relation to financing; financing was impossible to procure; financing was readily available from other sources than Metropolitan Life; defendant requested no assistance; defendant was furnished plans and manuals; and defendant never requested plans. Although nearly all of the 100 pages of the record summarizing the evidence pertains to the lack-of-financing theory of breach, Mr. Godwin testified that:

"Weyerhaeuser did not provide any planning service to help us adapt conventional plans into modular plans and shop drawings. They did not provide an architectural advisory service after the plant was completed. They did not provide my company business management assistance to more efficiently manage the home package operation. Weyerhaeuser did not provide or arrange for furnishing manuals on recommended methods for fabricating and erecting components."

In rebuttal to these contentions, Weyerhaeuser presented one witness, an employee in design and engineering, whose testimony was dedicated exclusively to refutation of those allegations of breach which did not pertain to financing.

While relating defendant's contentions, the trial court charged that "the defendant contends that the plaintiff breached the contract by failing to comply with the terms of it including the terms that the plaintiff assist in financing." The issue submitted to the jury failed to specify the nature of the breach; consequently the verdict is a general one.

With the record in such a state it is impossible for us to determine upon what theory the jury relied in finding a breach and whether the different theories of breach would have resulted in different measures of damages.

Faced with a quite similar situation in principle, the United States Supreme Court in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931) held the Court of Appeals for the First Circuit erred in awarding a partial new trial on the issue of damages with regard to defendant's counterclaim in a contract action. The trial jury had returned a verdict for both the plaintiff and the defendant on, respectively, the claim and counterclaim. The court of appeals found error in the trial court's instructions with respect to the measure of damages on the counterclaim and ordered a new trial restricted to that issue only. The Supreme Court held that while there was no need to retry the plaintiff's claim, the counterclaim must under the circumstances be tried in its entirety. It noted that it was impossible to tell from the record the precise nature of the breach which the jury must have found and said, 283 U.S. at 499-500:

> "The verdict on the counterclaim may be taken to have established the existence of a contract and its breach. Nevertheless, upon the new trial, the jury cannot fix the amount of damages unless also advised of the terms of the contract . . . .
>
> 　. . . .
>
> "Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. (Citations omitted.) Here the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial."

In *Hawk v. Lumber Co.*, 149 N.C. 10, 16, 62 S.E. 752, 754 (1908) this Court, finding error only in the admission of evidence with regard to damages in a contract action, nevertheless awarded a new trial on all issues. The Court said:

> "We think that, under the peculiar circumstances of this case, the new trial, which we award, should extend to all the issues, for the reason, among others which are controlling, that the facts of the case may be more fully developed and the questions intended to be presented, more clearly presented. To do otherwise might result in injustice to one or both of the parties. We grant the new trial gen-

erally in the exercise of the discretion which belongs to this court, as has been so often decided."

This is a case wherein appropriate definition of the issues during the pre-trial conference, or even later during trial, might have saved the parties the expense of full relitigation of the counterclaim. A similar suggestion under similar circumstances in a contract action was made to the parties in *Edgerton v. Taylor,* 184 N.C. 571, 581, 115 S.E. 156, 161 (1922). Such definition never having been achieved, we find that on the present record the question of damages on defendant's counterclaim is so intertwined with the issue of liability that to grant a new trial on the issue of damages only might well result in confusion and uncertainty and in injustice to one or both of the parties. For these reasons and to insure that all the facts bearing on the issue of damages are fully developed and the issue itself more clearly presented, we are constrained to award a new trial on the entire counterclaim.

It remains for us to address briefly certain of plaintiff's remaining contentions. We find the Court of Appeals ruled correctly that plaintiff's motions for directed verdict, for judgment notwithstanding the verdict and for summary judgment on defendant's counterclaim were properly denied. Whatever plaintiff's theory of defense, the evidence, taken in the light most favorable to defendant, was clearly sufficient to allow the jury to consider it.

[5] Plaintiff's next argument, that the court should have set aside the verdicts on the issues pertaining to the counterclaim because, once having found defendant to have breached the contract, the jury could not find plaintiff to have done so as well, is frivolous. The jury found only that defendant had breached the contract, not that the breach was material or that it excused plaintiff's performance. *See Towery v. Dairy,* 237 N.C. 544, 75 S.E. 2d 534 (1953); *Edgerton v. Taylor,* 184 N.C. 571, 115 S.E. 156 (1922); *Westerman v. Fiber Co.,* 162 N.C. 294, 78 S.E. 221 (1913); 17A C.J.S. Contracts § 474; *see also Gasoline Products Co. v. Champlin Refining Co., supra.*

Because our holding necessitates a new trial on the counterclaim, it is unnecessary to address the remaining issues.

The decision of the Court of Appeals remanding the case for a new trial only on the issue of damages is modified and this case is remanded to the Court of Appeals with direction

that it be remanded to the superior court for a new trial on defendant's counterclaim in its entirety.

Modified and affirmed.