This was a civil action, wherein the plaintiffs were seeking to enforce specific performance of a contract for the purchase of certain real property in the city of Goldsboro, and for damages for breach of contract for the purchase of certain personal property executed by the defendants, W. V. Taylor and Dallas Taylor to the plaintiffs, and for the recovery against the remaining defendants of judgment for $59,000 under a bond executed by said defendants for the faithful performance by the defendants W. V. Taylor and Dallas Taylor of the contract of purchase. *Page 573 
On 6 March, 1920, the plaintiffs and the defendants W. V. Taylor and Dallas Taylor entered into a written contract wherein the plaintiffs agreed to sell and said defendants agreed to buy certain real property in the city of Goldsboro, known as "Edgerton Stables," at and for the sum of $60,000, of which $1,000 was paid in cash and a bond for $5,000 executed and delivered to the plaintiffs by said defendants for the faithful performance of the contract on their part; the deed was to be delivered by plaintiffs on 15 October, 1920, and the remainder of the purchase money was to be paid on that day.
Some time thereafter the defendants W. V. Taylor and Dallas Taylor sold the defendant A. F. Moye an interest in their contract. A month or so thereafter the said defendants decided to advertise a sale of said property in separate portions at public auction, said sale to be made on terms and deeds to be made to the respective purchasers on 15 October, 1920, the day on which said plaintiffs agreed to deliver to said defendants a deed for said property free and clear of incumbrances.
When the plaintiff learned of this proposed auction sale of said property he objected thereto, and refused to let surveyors go on the property to get the dimensions thereof for the purpose of platting the same for such proposed sale, and refused to let any notices or advertisements of said sale be placed upon said property. At this time an auction sale of said property in lots or portions had been advertised to be held on 25 May, 1920. On 22 May, 1920, for the purpose of removing any objections the plaintiffs had to an auction sale of the property, and for the purpose of guaranteeing the performance of the contract of purchase by defendants, if said plaintiffs would not interfere with the auction sale thereof, defendants caused to be executed and delivered to plaintiffs a further bond signed by the defendants W. V. Taylor, A. F. Moye, Sam Bridgers, John R. Crawford, D. H. Dixon, H. L. Bizzell, J. B. Newsome, and W. P. Rose, in the sum of $59,000, the exact amount of the remainder of the purchase price for the property.
These defendants, other than W. V. Taylor and Dallas Taylor and A. F. Moye, had no interest whatever in the property or in any of the proceeds that might be derived from a sale thereof. The sole consideration for this bond, as alleged and admitted, was to remove any objections the plaintiffs might have to an auction sale of the property, and to cause plaintiffs to permit the auction sale to proceed without interference on his part. Plaintiffs accepted the bond for this purpose and on this consideration.
It is contended by the defendants, and they assert that the jury has found, that the consideration of this last mentioned bond has failed, for that it did not remove any and all objections on the part of the plaintiffs to an auction sale of said property, and that the plaintiffs, after the *Page 574 
bond was given and accepted by them, as aforesaid, did wrongfully interfere with the auction sale of the property, as alleged in the answer. They contend that notwithstanding this finding of fact by the jury, the court erroneously rendered judgment for the plaintiffs against all of the defendants for the full penalty of the bond.
It is further alleged and contended that the consideration for the second bond having failed, the only judgment that can be rendered against any of the defendants, if any, is against the defendants W. V. Taylor and Dallas Taylor, in the sum of $5,000, stipulated in the first contract and bond attached to the complaint.
The following verdict was returned by the jury in response to the issues submitted by the court:
"1. Were the plaintiffs J. M. Edgerton and wife ready, able, and willing, on 15 October, 1920, to convey the land to the defendants W. V. Taylor and Dallas Taylor, and to deliver to them the personal property, as required by the terms of the contract. Answer: `Yes.'
"2. Have the defendants W. V. Taylor and Dallas Taylor failed and refused to comply with their contract to purchase said lands and said personal property, as alleged in the complaint? Answer: `Yes.'
"3. What damages, if any, are the plaintiffs J. M. Edgerton and wife entitled to recover from the defendants on account of the failure of the defendants W. V. Taylor and Dallas Taylor to take over and pay for the real estate? Answer: `$59,000.'
"4. What damages, if any, are the plaintiffs entitled to recover of the defendants on account of the failure of the defendants W. V. Taylor and Dallas Taylor to take over and pay for personal property? Answer: `None.'
"5. Did the plaintiff J. M. Edgerton wrongfully interfere with the auction sale of the property, as alleged in the answer? Answer: `Yes.'
"6. If the plaintiff J. M. Edgerton wrongfully interfered with the auction sale, did such interference prevent the sale of said property, as alleged in the answer? Answer: `No.'
"7. If so, what damages are the defendants entitled to recover from the plaintiff J. M. Edgerton by reason of such wrongful interference? Answer: `None.'"
Judgment was rendered against the defendants for $59,000, with interest from 29 May, 1922, and other relief demanded, and the costs.
After stating the case: This case was not tried in the court below upon the correct theory, and the issues submitted to the jury did not embrace fully all the matters really in controversy. These issues were objected to by the defendants and other issues tendered by them, which were rejected by the court, and defendants duly excepted.
The court submitted, as will appear above, among others, the following issues to the jury:
"5. Did the plaintiff J. M. Edgerton wrongfully interfere with the auction sale of the property, as alleged in the answer?"
The court then charged the jury upon that issue as follows: "If the jury should find by the greater weight of the evidence that after the execution of the bond for $59,000, J. M. Edgerton, by word or act, said or did anything to stifle the sale or bid, the court charges you that the consideration of the bond would have failed, and it would be your duty to answer the fifth issue `Yes.'"
The defendants complain that notwithstanding the instruction of the court upon the fifth issue, and the affirmative response of the jury thereto, the court has rendered judgment against the defendants for the full amount of the bond, viz.: $59,000, contrary to the instruction of the court that if the jury found that J. M. Edgerton "said or did anything to stifle the sale or bid, the consideration of the bond would have failed." In other words, that, as the jury found, by the answer to the fifth issue that J. M. Edgerton had stifled the sale or bid, the consideration of the bond for $59,000 had failed, and it would follow therefrom that plaintiff could not recover on the bond, or, at least, could not recover as much as $59,000.
Then, again, the court refused to submit an issue as to the damages, if any, sustained by the defendants or the principals in the bond for $59,000, in consequence of the wrongful interference by J. M. Edgerton with the auction sale of the property. It does not follow that because the sale was not wholly prevented by the unlawful and wrongful interference of J. M. Edgerton with the same, that defendants, or some of them, were not damaged thereby, or that by reason of the wrongful conduct of J. M. Edgerton he may not be barred altogether of any remedy or right of action on the bond against those who executed the same, as sureties, or who guaranteed the payment of the debt to Edgerton, upon condition, which was precedent, that he should not interfere with the sale. It is not in this condition of the guaranty or undertaking of some of the defendants as sureties that they will pay the debt or be responsible for any default of their principals, if Edgerton did not prevent the sale, but only if he did not interfere with it, and would agree, as a part of the condition, that all objections to it had been removed; and, therefore, the sureties, or guarantors, are entitled to *Page 576 
stand upon the exact terms of their contract or undertaking, and if Edgerton failed to comply with it strictly, to be discharged or exonerated from all liability. Some of the defendants, who claim to be merely sureties or guarantors, insist that, when the facts of the case are fully disclosed and shown, by the evidence and under proper issues to be submitted to the jury, it will appear that their true position is but that of guarantors or sureties who have assumed responsibility for the payment of the debt only upon a condition precedent which has not been literally or even substantially performed, but has been openly and essentially violated by Edgerton, and that by reason thereof, the latter has forfeited all right to proceed against them in the event of their principals' default. They further contend that the only consideration for their agreement to answer for the wrong or default of their principals was the reciprocal promise of Edgerton that the would not interfere with the sale and withdraw all objections to it, and that this he failed to do. That he did interfere with the sale, as admitted by him, and found by the jury at the last trial; and further, that he, by doing so, and by other wrongful and illegal conduct, stifled competition and chilled the biddings, and caused great damage to the defendants, both the principals and the sureties, and thereby released the latter from all liability to him. It is expressly alleged that J. M. Edgerton announced at the sale, or caused to be proclaimed, that whoever bought the property would not get a good title. The auctioneer employed to sell the property talked with J. M. Edgerton, and requested him to bid on the property, but Edgerton replied to him that "there was no use bidding on the property, that we couldn't give title." One witness at the last trial, Thomas Burton, detailed his conversation with Edgerton at the sale, and testified as follows: "I saw Mr. J. M. Edgerton at the sale and asked who he was. I asked him to bid on the property, and he told me there was no use bidding on the property, that we couldn't give title, and I made the remark to him that I guessed we could, we didn't usually sell property unless we knew what we were doing, and he said we couldn't give title. He was standing at the large entrance door, and there were quite a number present. I do not know that I can recall the names of any of them. Mr. Hardy was standing there, and the young man we had advertising for us. In consequence of the remark made by Mr. Edgerton, I turned and asked who he was, and they told me it was Mr. Edgerton, and I got back on the wagon and made the announcement that if any one in the audience was afraid of the title they could make their first cash payment and we would place the first payment in any bank in the city until they were satisfied that the title was good. I didn't see any chance of selling the property when the owner was knocking the sale. When I spoke to Mr. Taylor, I was within ten feet *Page 577 
of Mr. Edgerton. I spoke wide open so any one in the world could hear it, and it was after speaking to Mr. Taylor that I made the announcement from the wagon. The crowd began dwindling away, and we couldn't hold them after making that announcement." This witness further stated that in consequence of what had occurred there was no sale, and that there were 1,000 or 1,500 people at the sale.
It is further alleged by the defendants that the conduct of the plaintiff J. M. Edgerton, as alleged, caused those intending to bid on said property to desist from executing their intention, and particularly two bidders, who had made bona fide bids aggregating $65,000, to withdraw said bids, said withdrawals being caused wholly and solely by a statement of the plaintiff J. M. Edgerton that a lawsuit would arise out of any purchase by any bidder at said sale. That in consequence of the wrongful conduct of the plaintiff J. M. Edgerton, as above alleged, the performance of the contract on the part of the defendants W. V. Taylor and A. F. Moye was made impossible, and the defendants are advised, informed, believe, and allege that such conduct was a breach of contract by the plaintiff. There was ample allegation and proof in the case of the suppression by J. M. Edgerton of biddings at the sale and of active and energetic efforts by him to discourage those present for the purpose of bidding for the property, and cause them to desist from said purpose by disparaging and flyblowing the title, which was offered to those desiring to purchase the property.
It would be difficult, if not undesirable, at this time and in the present situation of the case, with the issues not, in their nature, fully determinative, or decisive of the rights of the parties, and of the real questions involved, to state with any degree of precision the principles of law applicable to the case, as it may hereafter be developed, but the following may have important bearing when the case is correctly presented upon the true and essential issues, leaving their proper application to the different phases and aspects of the controversy as they may hereafter appear at the next trial. We therefore state them here:
If the contract is entire in the sense that each and all of its parts are interdependent, so that one part cannot be violated without violating the whole, a breach by one party of a material part will discharge the whole at the option of the other party. 6 R.C.L., Contracts, paragraphs 311 and 324, also 310. And again, as a general rule, it is settled that where one party is unable to perform his part of the contract he cannot be entitled to the performance of the contract by the other party. Moreover, a party positively refusing to perform his contract cannot sue the other for nonperformance, where the promises are interdependent, orIf one is the consideration for the other, and the contract is whollyexecutory. 6 R. C. L., Contracts, paragraph 324. *Page 578 
Where the performance of an agreement depends upon an act to be done by plaintiff, the doing of such act is a condition precedent, and the Court will not (always nor generally) inquire whether the doing of it is beneficial to defendant. So, whenever the entire consideration of the demand claimed is stipulated to be performed at or previous to the performance of the demand, the performance of the consideration becomes a condition precedent. 13 C. J., Contracts, paragraph 698.
The general rule is that promises, each of which forms the whole consideration for the other, will not be held to be independent of one another; and a failure of one party to perform on his part will exonerate the other from liability to perform. Clark on Contracts, 656; 13 C. J., Contracts, paragraph 540. Likewise, the party from whom the performance is due cannot (generally) assert that performance would be of no benefit to the other party. 13 C. J., Contracts, paragraph 706; also 13 C. J., Contracts, paragraph 735.
The decisions of our State seem to be in accord with these principles.Niblett v. Herring, 49 N.C. 262; Wooten v. Walters, 110 N.C. 254. One party to a contract cannot maintain an action for its breach without averring and proving a performance of his own antecedent obligations arising on the contract, or some legal excuse for a nonperformance thereof, or, if the stipulations are concurrent, his readiness and ability to perform them. Ducker v. Cochrane, 92 N.C. 597, cited and approved inMcCurry v. Purgason, 170 N.C. 468; Tussey v. Owen, 139 N.C. 457.
This Court said, by Hoke, J., in McCracken v. R. R., 168 N.C. 62, at p. 67: "It is true that our Court has frequently expressed its approval of the principle that, in ordinary business contracts, in which the consideration has wholly or in part passed, conditions subsequent which look to the forfeiture of rights and covenants for liquidated damages, which are in their effect but penalties, will be construed with some strictness, and, in the exercise of its equitable powers, that it will, at times, relieve against forfeiture in the one case and will adjust the conflicting interests in disregard of the penalty in the other. But the principle does not obtain in the case of conditions precedent where strict performance may be insisted on," citing Corinthian Lodge v. Smith,147 N.C. 244; 1 Pomeroy Eq. Jurisdiction (3 ed.), sec. 455. And in illustration of the principle controlling with reference to a condition precedent, the Court further said in that case: "Where the condition requires the railroad to be begun or finished before a certain date, it is held that time is of the essence of the contract, and the subscriber may be discharged from liability by a failure to comply with the condition." 1 Elliott R. R., secs. 116-117. Where a town agreed to issue its bonds on "performance of certain conditions by a railroad company — as that *Page 579 
it should construct its road from a certain point to a certain other point within a given time — if the company does not perform the condition within the time, it cannot, though prevented by floods, compel the issue of the bonds, though it afterwards completes the line. 1 Wood R. R., sec. 119, citing R. R. v. Thompson, 24 Kan. 170. A subscription, `providing that the town of F. be made a point, and said road be put under contract in one year from 1 September, 1853': Held, putting the road under contract was a condition precedent to the right of the company to recover, though the road was finished and running by 1 September, 1858; Judge Dillon saying, the letting to contract as stipulated might have hastened completion. R. R. v.Boestler, 15 Iowa 555. In the present contract the parties have not only made the express stipulation that if the road is not completed to a certain point in three years, the bonds will be surrendered and destroyed, and that all rights and equities under the contract shall cease, but have added yet another with regard to time, that the bonds shall not be delivered unless and until the railroad shall construct its lines as above set forth, and has in operation over said line, within three years, trains for the transportation of passengers and freight." And in Ducker v. Cochrane,92 N.C. 597, cited with emphatic approval in Corinthian Lodge v. Smith,supra, the Court held: "That one party to a contract cannot maintain an action for its breach without averring and proving a performance of his own antecedent obligations arising on the contract, or some legal excuse for a nonperformance thereof, or, if the stipulations are concurrent, his readiness and ability to perform them." And the Court in that case further says: "This principle has been recognized and applied by us in many well considered cases. Tussey v. Owen, 139 N.C. 457; Jones v. Mial, 79 N.C. 164, modified, but not on this point, in 82 N.C. 252; Niblett v. Herring,49 N.C. 262; Grandy v. McCleese, 47 N.C. 142. And it is also well established that when the stipulations imposed by such a contract on the complaining party are in the nature of conditions precedent, a strict compliance may be insisted on. Mizell v. Burnett, 49 N.C. 249; Norringtonv. Wright, 115 U.S. 188; Oakley v. Morton, 11 N.Y. 25; Pickering v.Greenwood, 114 Mass. 479."
And more especially as bearing upon the particular questions in this case, attention is directed to the fact that the bond in question is a surety bond, the nature or character of which is explained in 20 R.C.L., at p. 946, under the title "Principal and Surety," paragraphs 2 and 3. Since from an early date the liability of a surety has been considered as strictissimi juris, it is a general rule, where the surety enters into the contract of suretyship upon condition and in consideration of something to be first done by the creditor, that if the latter omits to perform the condition the surety is not liable. 21 R.C.L., 962, "Principal and *Page 580 
Surety," paragraph 16; Lawrence v. Walmsley, 104 R.C.L., 799; see note, 22 Ann. Cas., 415. Sureties are favored by the law. Their obligations are ordinarily assumed without pecuniary compensation, and are not to be extended by implication or construction. They have a right, as we have said, to stand on the terms of their contract, and having consented to be bound to a certain extent only, their liability must be found within the terms of that consent, strictly construed, and it has been said to be insufficient that the surety may sustain no injury by a change in the contract, or that it may even be for his benefit. 21 R.C.L., 975, "Principal and Surety," paragraph 28, and see especially note 11, p. 976.
In Jeffries v. Lamb, 73 Ind. 202, a creditor whose indebtedness was secured by a chattel mortgage took from his debtor a note signed by a surety. The creditor at the time promised the surety to cancel the chattel mortgage so as to enable the surety to secure a mortgage on the chattel from the debtor as security to him. The creditor failing to do this, it was held that the surety was not liable, the Court saying: "These facts show, we think, an entire failure of the consideration of the note in suit as between the appellant as payee of the note and the sureties therein."
In Fay v. Jenks, 93 Mich., the Court held that "If the creditor violated the agreement for the exclusive agency as per contract, the sureties were not liable, irrespective of the extent to which the agreement was violated and the resulting injury to the corporation." The court pointed out in that case that the defense was not on the ground of a partial failure of consideration, but upon the ground that the creditor violated the condition upon which the surety signed, and which was the sole consideration of his suretyship.
In Jones v. Kerr, 30 Ga., the Court said: "We understand the law to be this: If a creditor neglects to perform, or performs defectively, any of the conditions either expressed or implied which are incumbent upon him, or any of the terms which, collectively, form the consideration of the surety's contract or the contract to which the surety acceded, the surety is discharged, or rather, his liability never attached."
In Capps v. Smith, 4 Ill. 177, the Court said: "The rule is well settled that where the undertakings of the parties to a contract are mutual, one in consideration of the other, they are to be regarded as dependent contracts, which neither party can enforce without averring and proving a performance." Coughran v. Bigelow, 164 U.S. at p. 301, and especially on p. 310. See, also, Gamble v. Cuneo, 47 N.Y. Suppl., at p. 548, where the Court said: "The rule that a contract of a surety isstrictissimi juris is not a rule of construction, but a rule as to the application of the contract after its meaning has been *Page 581 
ascertained." See, further, Day v. Dox, 24 Amer. Dec., 137; Gayton v. Dey, 178 Fed., 249 (101 C.C.A., 609); Hunt v. Livermore, 5 Pick. (Mass.), 101;Chapman v. Clements, 56 Southwestern, 646 (last paragraph of opinion);Gardner v. Edwards, 119 N.C. 566.
It is well understood in the law that parties must be permitted to make their own contracts in their own way, and they will be valid and binding upon them except where not contrary to good morals, or for some other reason, deemed sufficient, they are not sanctioned by the law, or are declared invalid and unenforceable in the interest of public policy.
The plaintiff has made a contract, in this instance, that he would refrain from doing anything that would interfere with the making of this sale, or obstruct the same, and has agreed that he would withdraw all objections to it, and the defendants, some of whom are sureties, or guarantors, for the performance of their part of the contract, have agreed, in consideration of plaintiff's promise, as set forth, and upon condition that he fully and faithfully performs the same, that they will become bound to him for the faithful performance of their part of the contract. But it appears that the promise of the one was the only consideration for the promise of the other, or to state it differently, the promise of J. M. Edgerton, and the fulfillment of it, was necessarily a condition precedent to any obligation on the part of the defendants, or, at least, such of them as were to be sureties or guarantors, that they should become bound to Edgerton in the manner specified in the contract. But we are of the opinion that the case was not so tried throughout as to decide the dominant question in it, nor yet to determine it with respect to other important matters involved in the controversy, one of these questions being the amount of damages to which the defendants, or any of them, are entitled to recover if plaintiffs have violated the contract on their part, and the actual prevention of the sale by the plaintiffs is not essential to their recovery of such damages, because if plaintiffs have impaired the right of the defendants to have a sale free from objection, and, of course, without interference by them and free from any act or conduct of theirs which was calculated to impede the sale by depressing or chilling the biddings, by disparaging the title to the property, or by other means or conduct, and to the extent that defendants' rights were impaired in such manner, it would seem that they are entitled to be compensated for any loss they sustained.
It may be that it would conduce to a more intelligent and a clearer perception of the controlling or determinative issues if the parties should replead and state their respective sides of the controversy more precisely, under the order of the Court, and that thereupon other issues be framed and submitted to the jury, but the case can proceed without this being done, if the parties are so advised, what we have said in this *Page 582 
regard being merely suggestive, and not as any compulsory direction by us, but as something left entirely to the discretion of counsel, and to be done with the approval of the presiding judge.
We order a new trial as to all the issues, as this will best attain the end in view, and will the more certainly conserve, if not advance, the rights and interests of the several parties.
We need not consider the other exceptions, though this does not mean that they are not well taken, but that it would not be timely to refer to them more minutely than we have already done, as we deem it best to reserve all other questions until the facts are more fully and clearly presented to us than they are in this record.
There must be another trial for the purposes we have indicated, and it will be so certified.
New trial.