**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SEA-ROY CORPORATION;
AMERAMAX CONTRACTORS
EQUIPMENT AND SUPPLIES,
INCORPORATED,
Plaintiffs-Appellants,

TRIMM, INCORPORATED; CHRIS R.
SMITH,
Counter-Defendants-
Appellants,

v.

PARTS R PARTS, INCORPORATED, a/k/a
P.R.P., Incorporated; RAMMAX
MASCHINENBAU, GMBH; MULTIQUIP,
INCORPORATED; SUNBELT EQUIPMENT
& RENTALS, INCORPORATED,
Defendants-Appellees,

and

FARYMANN DIESEL, GMBH; KRACHT,
GMBH,
Defendants.

No. 98-1028

SEA-ROY CORPORATION;
AMERAMAX CONTRACTORS
EQUIPMENT AND SUPPLIES,
INCORPORATED,
Plaintiffs-Appellants,

TRIMM, INCORPORATED; CHRIS R.
SMITH,
Counter-Defendants-
Appellants,

v.

No. 98-1546

PARTS R PARTS, INCORPORATED, a/k/a
P.R.P., Incorporated; RAMMAX
MASCHINENBAU, GMBH; MULTIQUIP,
INCORPORATED; SUNBELT EQUIPMENT
& RENTALS, INCORPORATED,
Defendants-Appellees,

and

FARYMANN DIESEL, GMBH; KRACHT,
GMBH,
Defendants.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, Sr., District Judge.
(CA-94-59-1)

Argued: October 29, 1998

Decided: March 4, 1999

Before WILKINSON, Chief Judge, WILLIAMS, Circuit Judge,
and THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

_____

2

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Carey Paul DeDeyn, SUTHERLAND, ASBILL &
BRENNAN, L.L.P., Atlanta, Georgia, for Appellants. Alan Mitchell
Wiseman, HOWREY & SIMON, Washington, D.C., for Appellees.
**ON BRIEF:** John A. Chandler, SUTHERLAND, ASBILL & BREN-
NAN, L.L.P., Atlanta, Georgia, for Appellants. Michael G. Cowie,
Joseph A. Ostoyich, HOWREY & SIMON, Washington, D.C., for
Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendant RAMMAX is a small German manufacturer of trench
roller compaction machines used in the construction industry. From
1981 through 1991, RAMMAX distributed its rollers in the United
States through plaintiff Sea-Roy Corporation, a small company com-
pletely owned by its founder and president, Chris Smith. In 1991, by
reason of payment arrearages, RAMMAX terminated the exclusive
agreement it had with Sea-Roy, and entered into an order-by-order
arrangement with Sea-Roy, as well as with another, larger U.S. distri-
bution company, defendant Multiquip, Inc. By the end of 1992, Sea-
Roy was indebted to RAMMAX for approximately $1.8 million.
RAMMAX then terminated Sea-Roy and entered into an exclusive
distribution agreement with Multiquip.

Three months later, Sea-Roy and two other companies owned and
controlled by Smith, plaintiffs AMERAMAX and Trimm, Inc., intro-
duced their own trench roller. This roller, in design and detail, was

3

essentially a duplicate of the RAMMAX model previously distributed by Sea-Roy.

In 1994, Sea-Roy filed suit against Parts-R-Parts, a distributor of engines and parts used in production of the RAMMAX and Sea-Roy rollers, alleging restraint of trade by Parts-R-Parts in refusing to provide certain parts Sea-Roy needed to produce its rollers. RAMMAX and other defendants were added by amended complaint alleging conspiracy and other causes of action. Defendants other than RAMMAX and Multiquip were previously dismissed and did not appear as parties to the appeal.

Plaintiffs sought to go to trial on claims of breach of contract, tortious interference with contractual relations, trademark infringement under the Lanham Act, violations of the Sherman Antitrust Act and Robinson-Patman Act, and defamation and unfair competition. RAMMAX and Multiquip counterclaimed alleging trademark infringement and debts due on Sea-Roy's open account. Defendants also presented a "piercing the corporate veil" claim against Sea-Roy and owner Smith.

Prior to trial, the district court granted defendants' motions for summary judgment on all of the plaintiffs' claims except breach of contract. The court also granted summary judgment in favor of defendants on the trademark infringement counterclaim, reserving only the issues of willfulness and damages for the jury. At the close of plaintiffs' evidence on the breach of contract claim, the district court granted judgment as a matter of law for the defendants. The only issues to reach the jury were the defendants' issues of piercing the corporate veil, willfulness of infringement, and damages. The jury returned a verdict against the plaintiffs on each of these issues.

Plaintiffs filed an extensive appeal, asserting as error the following: 1) the grant of summary judgment in favor of the defendants on the trademark infringement claim; 2) dismissal of plaintiffs' motion for judgment as a matter of law on defendants' counterclaim to pierce the corporate veil; 3) the award of damages in deutschemarks rather than dollars; 4) the exclusion of evidence concerning the amount due on plaintiffs' open account; 5) the district court's instructions to the jury on the plaintiffs' "willingness"; 6) the district court's denial of plain-

tiffs' motion for judgment as a matter of law on the calculation of plaintiffs' profits; 7) the district court's granting of defendant's motion for judgment as a matter of law on plaintiffs' breach of contract claim; 8) the district court's exclusion of plaintiffs' evidence as to lost profits; and 9) the district court's granting of Multiquip's motion for summary judgment dismissing plaintiffs' tortious interference with contract claim.

This Court has jurisdiction pursuant to 28 U.S.C.§ 1291.

We review a district court's granting of summary judgment de novo. See Wiley v. Mayor and City Council of Baltimore, 48 F.3d 773 (4th Cir. 1995). The Court must consider all the pleadings and allegations in a light most favorable to the non-moving party and decide whether there is a genuine issue of material fact to be submitted to the trier of fact. Fed. R. Civ. P. 56(c). If the Court finds the evidence insufficient to support a reasonable jury verdict in favor of the non-moving party, the district court's granting of summary judgment must be affirmed. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251-52 (1986).

We also review a district court's grant or denial of a Motion for Judgment as a Matter of Law de novo as a question of law. See Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 656 (4th Cir. 1996).

Accordingly, this Court will review de novo the issues as to summary judgment and judgment as a matter of law.

Plaintiffs concede that RAMMAX is a registered trademark and that registration establishes "prima facie evidence of the registrant's right to use the mark," and a "strong presumption of validity" as well. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 (4th Cir. 1984). Plaintiffs contend, however, that an issue of material fact exists as to whether the name RAMMAX was generic.

A trademark only becomes generic when it is proved by a preponderance of the evidence that consumers no longer view it as indicative of the product's source, but rather as synonymous with the entire class

5

of products, regardless of manufacturer. Id. at 1529 n.4. The court below ruled as a matter of law that the plaintiffs failed to demonstrate an issue of material fact sufficient to overcome the presumptive validity of the RAMMAX name. The court's analysis began with the plaintiffs' own admission that they had no right to use the RAMMAX name, and proceeded through the factors outlined by this Circuit in Sara Lee Corp. v. Kaiser-Roth Corp., 81 F.3d 455 (4th Cir. 1996). We find no error in its conclusion.

The test for trademark infringement is the "likelihood of confusion" of the consumer; actual confusion is not required. Id. at 463.

> To ascertain the likelihood of confusion between two trademarks, we consider a number of factors. These factors include:
>
> (1) the distinctiveness of the senior mark;
>
> (2) the similarity of the two marks;
>
> (3) the similarity of the goods or services that the marks identify;
>
> (4) the similarity of the facilities employed by the parties to transact their business;
>
> (5) the similarity of the advertising used by the parties;
>
> (6) the defendant's intent in adopting the same or similar mark, and
>
> (7) actual confusion.

Id. (quoting Pizzeria Uno, 747 F.2d at 1527). Courts routinely grant relief where the likelihood of confusion is obvious. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc. , 43 F.3d 922, 925 (4th Cir. 1995). The district court used the above seven factors, and two additional factors, 8) the quality of the infringer's product, and

6

9) the sophistication of the relevant consuming public, in reaching its decision.

Factors 1, 3, 4, 5, 6, and 8 (six of nine) were uncontested by the plaintiffs, although these factors support a finding of infringement. Factor 1, the distinctiveness of the RAMMAX mark, is established by the fact that the name is a fanciful term "specifically invented to identify a company and its products," and thus it is entitled to the widest possible protection of the law. Sara Lee, 81 F.3d at 465. Factors 3 (goods), 4 (facilities), 5 (advertising), and 8 (quality), are uncontested and established by the facts that marks of both plaintiff AMERA-MAX and defendant RAMMAX are used on the same goods (trench rollers), manufactured and sold in similar facilities, the goods are nearly identical, the goods are of comparable quality and are sold in direct competition with each other, and they are advertised in the same publications in a similar manner. Thus, the district court concluded correctly that the "parties are fierce competitors in the same industry, offering virtually identical products to the same class of consumers by similar means." (J.A. at 2634.)

Factor 6, the infringer's intent, is established in this case by both plaintiffs' admissions and conduct. Plaintiffs' witness Smith testified that he "could have sold [his roller] under any name that was open," but that he specifically chose a name to build upon the RAMMAX mark, already established among consumers with a good reputation, and that he admittedly copied the RAMMAX's roller piece by piece, including the orange color, so as to associate plaintiffs' machine with the RAMMAX machines. Also, being a "second comer" to the market where RAMMAX was first, the plaintiffs had a duty to "so name and dress [their] product as to avoid all likelihood of consumers confusing it with the product of the first comer." Osem Food Indus. Ltd. v. Sherwood Foods, Inc., 917 F.2d 161, 165 (4th Cir. 1990). The district court correctly found that the plaintiffs' failure to distinguish their product from that of RAMMAX weighed in favor of intentional infringement.

Factor 2, the similarity of the two marks, is also clear in this case. Although the names, "AMERAMAX" and "RAMMAX", are not identical, they are very similar in both appearance and sound. The two words share five common letters, in the same sequence, and are pro-

7

nounced similarly. Both marks are presented, on virtually identical products, in virtually identical type styles, being all-capital, block letters.

In light of these facts, the district court was correct in finding that the two marks are very similar and thus this factor weighs in favor of finding a great "likelihood of confusion." All the factors in the analysis weigh in favor of a great likelihood of confusion, and a finding of infringement on the part of the plaintiffs. The district court was, therefore, correct in finding for the defendants on the cross claim for trademark infringement.

North Carolina adheres to the "mere instrumentality" rule in piercing the corporate veil claims. Glenn v. Wagner , 313 N.C. 450, 453, 329 S.E.2d 326, 329 (1985). To pierce a corporate veil, one must prove that the subject individual: 1) controlled or dominated the subject corporation; 2) used that control to commit a wrong or unjust act, and 3) caused injury or loss to the complaining party. Id. at 455, 329 S.E.2d at 330. Further factors considered in determining whether to pierce a corporate veil include: 1) inadequate capitalization; 2) noncompliance with corporate formalities; 3) complete domination and control of the corporation so that it has no separate identity, and 4) excessive fragmentation of a single enterprise into separate corporations. Id. at 455, 329 S.E.2d at 330-31.

Plaintiffs argue that the jury verdict in favor of the defendants on their "piercing the corporate veil counterclaim" fails as a matter of law.

The evidence supporting the jury verdict is substantial. From the evidence presented, the jury could find that Smith, owner of Sea-Roy, fraudulently conveyed assets to AMERAMAX, a wholly-owned subsidiary, in order to prevent RAMMAX from recovering the debt owed by Sea-Roy; that he personally controlled or dominated his three companies; that funds of his companies were commingled; that the companies routinely paid the debts of the others; that corporate funds were used to pay Smith's personal debts; that his companies shared offices, personnel, parts and accounting departments and the same telephone and facsimile numbers; and that Smith still makes key company decisions. Such evidence was more than sufficient to support a

8

jury verdict against plaintiffs. See Atlantic Tobacco Co. v. Honeycutt, 101 N.C. App. 160, 168, 398 S.E.2d 641, 645 (1990).

Plaintiffs contend that the district court committed error in instructing the jury to award damages in deutschemarks rather than dollars. This assignment of error is without merit. "The court should enter the judgment in the currency the parties themselves selected for their dealings, the currency in which the loss is felt." Matter of Oil Spill by Amoco Cadiz, etc., 954 F.2d 1279, 1328 (7th Cir. 1992); see also In re Good Hope Chem. Corp., 747 F.2d 806, 809 (1st Cir. 1984) (award in deutschemarks); Mitsui & Co., Ltd. v. Oceantrawl Corp., 906 F. Supp. 202, 203 (S.D.N.Y. 1995) (award in yen). The parties in this case conducted their dealings in deutschemarks. The loss suffered by RAMMAX, a German corporation, was felt in deutschemarks. The district court committed no error by instructing the jury to award damages in the currency in which the parties themselves chose to deal. The court's instructions clearly and fairly focused the jury on the finding it was to make.

Plaintiffs next assign as error the exclusion of evidence concerning the amount due on its open account.

This Court gives substantial deference to a lower court's decision to exclude evidence and will reverse only on a showing of abuse of discretion. See United States v. Achiekwelu, 112 F.3d 747, 753 (4th Cir.), cert. denied, 118 S. Ct. 250 (1997).

After the trial had entered its second day, plaintiffs undertook to introduce new summary exhibits purporting to establish "offsets" showing RAMMAX owed plaintiffs money rather than the reverse. Plaintiffs' contemporaneous financial records did not reflect such offsets, only their debts. Plaintiffs sought to introduce the summary "offsets" through an employee who testified he had no responsibility for the records during the time frame in question. The plaintiffs had not complied with the timetable for discovery established by Fed. R. Civ. P. 26(a)(3), although the case had begun more than three years earlier, and the records had been in their possession and available for summation the entire time. No meaningful advance notice had been provided. The district court found the late tender to be fundamentally

9

unfair to defendants and excluded the evidence. No clear abuse of discretion is shown.

The plaintiffs also assign as error the district court's instruction on "willfulness" when discussing trademark infringement. The court instructed as follows:

> The Court has found as a matter of law that the use of the name AMERAMAX does constitute trademark infringement of RAMMAX's trademark. . . . The burden is upon RAMMAX to prove by the greater weight of the evidence that the infringement was willful. I instruct you that the matter was done willfully, if it was done knowingly, deliberately, and intentionally as contrasted with accidentally, carelessly, or unintentionally. The term willfully refers to the state of mind with which one acts. Thus, you should determine whether the infringement was willful.

(J.A. at 2530-31.) "It is not the appellate function to pick myopic fault with trial instructions. The question is whether the charge focused the eye of the jury clearly and fairly on the finding it was to make." Nelson v. Green Ford, Inc., 788 F.2d 205, 209 (4th Cir. 1986). While it may be argued that an infringer must be found to have the specific intent to cause confusion or deception before willfulness can be found, there is no such explicit requirement in this Circuit. See George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537-41 (2nd Cir. 1992). Even if such were the rule, the instruction would appear to be adequate since the jury is clearly focused on the finding it is to make. The evidence demonstrates an intentional infringement, and the similarity is in no respect a serendipitous coincidence of marks and products of two different manufacturers. The jury was thus properly instructed.

Plaintiffs next contend error for failure to grant judgment as a matter of law on their calculation of profits.

Defendants presented an accounting expert who testified that the plaintiff companies' internal financial records reflected that they had earned a total of $4 million in profits from the infringement of defendants' mark after deducting the cost of goods sold. Plaintiffs did not

challenge the admissibility of the expert's opinion or present rebuttal evidence. Section 1117 of the Lanham Act states,"[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Plaintiffs' duty in the calculation of damages is clear. They did not avail themselves of the opportunity at trial to establish the elements of cost and deduction now asserted. A de novo review establishes the propriety of the district court's refusal to grant plaintiffs' motion for judgment as a matter of law on infringement damages.

Plaintiffs likewise dispute the lower court's grant of defendants' motion for judgment as a matter of law dismissing the breach of contract claim.

The jury found that plaintiffs were indebted to defendants by failure to pay for goods received. (J.A. at 2647.) Plaintiffs agreed that refusal to pay for goods received could constitute grounds for contract cancellation. "When the buyer fails to pay the price as it becomes due, the seller may recover . . . the price of the goods accepted." N.C. Gen. Stat. § 25-2-709 (1994). "[T]he general rule governing contracts requires that if either party commits a material breach of the contract, the other party should be excused from the obligation to perform further." Crosby v. Bowers, 87 N.C. App. 338, 345, 361 S.E.2d 97, 102 (1987); see also American Hot Rod Ass'n, Inc. v. Carrier, 500 F.2d 1269, 1273 (4th Cir. 1974) (citing Edgerton v. Taylor, 184 N.C. 571, 115 S.E. 156, 159 (1922)); McCurry v. Purgason , 170 N.C. 463, 87 S.E. 244, 246 (1915) (citing Ducker v. Cochrane , 92 N.C. 597 (1885)). Plaintiffs' failure to pay for the rollers received under the contract constituted an antecedent breach of the contract and justified termination by defendants. See Leviton Mfg. Co., Inc. v. Butch Mfg. Co., 37 N.C. App. 726, 728, 247 S.E.2d 1, 2 (1978). The lower court's ruling was correct.

Nor does plaintiffs' claim that an oral modification of the contract altered the terms of payment entitle plaintiffs to relief. The only evidence to support this contention was Smith's own testimony concerning an alleged phone call. There was no evidence to corroborate the call and no mention to defendants concerning such a call when payment was demanded numerous times over a period of several months. "Evidence of an oral agreement which modifies a written contract

11

should be clear and convincing. We do not think[plaintiffs' statement] satisfies this requirement. The evidence, if allowed, would not be sufficient for submission to the jury." Ford Motor Credit Corp. v. Jordan, 5 N.C. App. 249, 253, 168 S.E.2d 229, 232 (1968) (citations omitted).

We also conclude that the district court correctly dismissed plaintiffs' claim for tortious interference by defendant Multiquip. "Multiquip's actions were of the type expected in a hearty competitive environment where rivals must continually market themselves as offering a better product or service where justified in order to survive." (J.A. at 2594.) See also Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc., 992 F.2d 59, 63 (4th Cir. 1993).

To establish a claim for tortious interference with contractual relations, a plaintiff must prove: 1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; 2) the defendant knew of the contract; 3) the defendant intentionally induces the third person not to perform the contract; 4) in so doing, the defendant acts without justification; and 5) the plaintiff suffers damages as a result. See United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). Multiquip could not have interfered with a contract which was not breached. Multiquip simply sought RAMMAX's business and marketed its superior financial condition and service. (J.A. at 2593.) This it had a right to do. Given plaintiffs' admitted poor performance, it was not surprising or improper for RAMMAX to select Multiquip as its new exclusive distributor for its rollers.

The Court has examined the remaining issues presented by this appeal and finds no reversible error.

For the reasons set forth above, the judgment of the district court is

AFFIRMED.

12